IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC. | * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Case No. PX-17-2148 |
| TRI-STATE ZOOLOGICAL PARK OF WESTERN MARYLAND, INC., et al. | * * * | |
| Defendants. | * | |

## MEMORANDUM OPINION

This case has been referred to me for discovery disputes and related scheduling matters. ECF 58. Presently pending is Animal Park Care & Rescue, Inc.'s ("Animal Park"), Tri-State Zoological Park of Western Maryland, Inc.'s ("Tri-State Zoo"), and Robert Candy's (collectively "Defendants'") Motion to Compel Plaintiff People for the Ethical Treatment of Animals, Inc. ("PETA") to produce certain documents, photographs, and video and audio recordings responsive to Defendants' discovery requests. ECF 56. The issues have been fully briefed (ECF 56, 61, 75, 79),[1] and I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the following reasons, Defendants' Motion is GRANTED in part and DENIED in part.

## BACKGROUND

On July 31, 2017, PETA filed suit against Defendants alleging violations of the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-1544, and seeking declaratory and injunctive relief. ECF 1. In particular, PETA alleges that two ring-tailed lemurs, five tigers, and one African lion, owned by Animal Park and exhibited at Tri-State Zoo, are confined in

---

[1] PETA's motion to file surreply (ECF 79) is GRANTED, though none of the arguments therein have materially affected the analysis.

1

conditions that violate the ESA. ECF 1 ¶¶ 1, 3-4, 12-13. PETA's allegations are based, at least in part, on its pre-suit investigation of the conditions at Tri-State Zoo. *See* ECF 61 at 4. PETA employees, as well as volunteers, conducted site visits to Tri-State Zoo, took photographs and videos of Defendants' animals, and "scrupulously" reported to PETA what they observed. *Id.*

On March 12, 2018, Tri-State Zoo served PETA with a Request for Production of Documents. *See* ECF 56-3. PETA's April 11, 2018 Responses to two of Tri-State Zoo's Requests, regarding PETA's site visits to its facility, are the subject of the current dispute. The Requests and Responses are as follows:

> **<u>Document Request No. 13</u>** All photographs, videotapes or audiotapes, diagrams, surveys, or other graphic representations of information referring or relating to the subject matter of this action, including any photographic, video, or audio recordings made by the Plaintiff during any site visits to the Defendant's facility, whether pre or post litigation, and whether those visits were made "undercover" (i.e. surreptitiously) or with full disclosure to Defendant.
>
> **Response** PETA reiterates and incorporates the General Objections stated above. PETA further specifically objects to this Request on the grounds of attorney-client privilege, attorney work product privilege, or other applicable privilege, immunity, protection, statute, or case law. PETA further objects to the term "subject matter of this action" as used in this Request as vague, ambiguous, overbroad, and beyond the scope of Federal Rule of Civil Procedure 26(b)(1) to the extent that it means something other than the tigers, lions, or lemurs at Tri-State. PETA further objects to the extent that this Request requires PETA to supply, in narrative answer format, descriptions regarding how each site visit to Tri-State was conducted, a requirement that is unduly burdensome and goes beyond the scope of Federal Rules of Civil Procedure 26(b)(1) and 34. PETA further objects to this Request to the extent that it seeks disclosure of photo and videos that would annoy, embarrass, oppress, cause undue burden or expense, or reveal trade secrets or other confidential research or information.
>
> . . . .
>
> **Document Request No. 18** All investigatory reports, whether generated internally or subcontracted, which relate to or were initiated as a result of the subject matter of this action.

> **Reponse** PETA reiterates and incorporates the General Objections stated above. PETA further specifically objects to this Request on the grounds of attorney-client privilege, attorney work product privilege, or other applicable privilege, immunity, protection, statute, or case law, or First Amendment-protected membership information. PETA further objects to the term "subject matter of this action" as used in this Request as vague, ambiguous, overbroad, and beyond the scope of Federal Rule of Civil Procedure 26(b)(1) to the extent that it means something other than the tigers, lions, or lemurs at Tri-State. PETA further objects to this Request to the extent it seeks information that is outside PETA's possession, custody or control, publicly available or equally obtainable from third parties or from some other source than PETA that is more convenient, less burdensome, or less expensive. PETA further objects to this Request to the extent that it seeks disclosure of documents that would annoy, embarrass, oppress, cause undue burden or expense, or reveal trade secrets or other confidential research or information.

ECF 56-4 at 16-17, 21-22.

In response to Tri-State Zoo's Requests, PETA "produced to Defendants *all* photographs, videos, raw log notes, and declarations prepared by witnesses upon whose testimony it plans to rely at trial." ECF 61 at 1 (emphasis in original). Furthermore, since the filing of the instant motion (ECF 56), PETA has agreed to produce "all photographs and videos taken by [its investigators], regardless of whether [it] intends to rely upon them at trial."[2] ECF 61 at 2. Accordingly, the only remaining dispute regarding Requests 13 and 18 is whether PETA must produce log notes, memoranda, investigatory reports, and other correspondence relating to the conditions at Tri-State Zoo that were prepared by witnesses upon whose testimony PETA does not intend to rely at trial. *See* ECF 61 at 2, 11-18.

PETA has withheld these remaining documents on the grounds that they are subject to attorney work product protection. *Id.* Defendants, however, argue that the requested documents are not work product. ECF 56-1 ¶ 12. Alternatively, if the documents constitute work product,

---
[2] Defendants' Reply (ECF 75) indicates that PETA has yet to produce these photographs and videos and has not provided a definitive timetable for their production. Accordingly, PETA is ordered to produce all photographs and videos that its investigators took at the Tri-State Zoo on or before August 10, 2018.

Defendants argue that, by "producing and using" the documents "selectively at depositions while withholding the remainder of the documents," PETA has waived its claim to work product protection. *Id.* Defendants' waiver argument is dispositive.

## **LEGAL STANDARDS**

Federal Rule of Civil Procedure 26(b)(1) permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." In determining proportionality, the Court must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

In withholding the remaining documents responsive to Requests 13 and 18, PETA has asserted attorney work product protection. ECF 61 at 2. "The work-product privilege protects from discovery 'an attorney's work done in preparation for litigation.'" *In re Grand Jury Subpoena*, 870 F.3d 312, 316 (4th Cir. 2017) (quoting *In re Grand Jury Proceedings #5*, 401 F.3d 247, 250 (4th Cir. 2005)). Importantly, federal courts "afford greater protection to opinion work product than to fact work product." *Id.* Fact work product constitutes a "transaction of the factual events involved" and "may be obtained upon a mere 'showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship.'" *In re Grand Jury Proceedings*, 102 F.3d 748, 750 (4th Cir. 1996) (citation omitted). Opinion work product, however, "represents the actual thoughts and impressions of the attorney," is more "scrupulously protected," and "enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." *In re Grand Jury Subpoena*, 870 F.3d at 316 (citation and internal quotations omitted).

4

When a partial disclosure of material subject to work product protection is made, waiver also applies to an undisclosed communication or information if: "(1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." Fed. R. Evid. 502(a). Federal Rule of Evidence 502(a) thus embodies the principle that "privileges cannot be used as both a sword and a shield. A party cannot choose to disclose only so much of allegedly privileged matter as is helpful to his case." *Burlington Indus. v. Exxon Corp.*, 65 F.R.D. 26, 46 (D. Md. 1974) (citing 8 Wigmore, Evidence § 2327 (McNaughton Rev. 1961)). Thus, "[o]nce [a] party begins to disclose any confidential communication for a purpose outside the scope of the privilege, the privilege is lost for all communications relating to the same matter." *Id.*; *see Elat v. Ngoubene*, No. CIV. PWG-11-2931, 2013 WL 4478190, at *6 (D. Md. Aug. 16, 2013) (holding that, because a party cannot use a privilege as both a sword and a shield, "the disclosure of some, but not all, of a body of communications results in waiver of attorney—client privilege and work product protection if" Federal Rule of Evidence 502(a) is satisfied) (citing Fed. R. Evid. 502(a); *Burlington Indus.*, 65 F.R.D. at 46); *Richardson v. Sexual Assault/Spouse Abuse Res. Ctr., Inc.*, 764 F. Supp. 2d 736, 739 (D. Md. 2011) ("The privilege is impliedly waived . . . when the interests of fairness require waiver, such as . . . when the party attempts to use the privilege both as a shield and a sword.") (citations and internal quotation marks omitted).

## **ANALYSIS**

As discussed above, PETA argues that log notes, memoranda, investigatory reports, and other correspondence relating to the conditions at Tri-State Zoo, that were prepared by witnesses upon whose testimony PETA does not intend to rely at trial, are subject to work product protection. *See* ECF 61 at 2, 11-18. PETA is mistaken. Assuming arguendo that this

5

information qualifies as work product, PETA has waived the protection, as to fact work product, by attempting to use it both as a shield and a sword. *See Burlington Indus.*, 65 F.R.D. 26 at 46. PETA's opinion work product, however, "the actual thoughts and impressions of [its] attorney[s]," remains protected and need not be produced. *See In re Grand Jury Subpoena*, 870 F.3d at 316.

PETA's suit alleges that Defendants have violated the ESA for their ongoing "take" of two ring-tailed lemurs, five tigers, and one African lion. ECF 1 ¶ 3. Under the ESA, the term "take" means to "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. 1532(19). Specifically, PETA alleges that Defendants' practices "harm" and "harass" the ring-tailed lemurs, tigers, and lion in violation of the ESA's "take" prohibition, because:

> [Defendants] confine the two ring-tailed lemurs in a woefully inadequate enclosure, void of necessary enrichment and environmental enhancement; deprive them of appropriate companionship; and deny them a safe, sanitary environment. Defendants [] confine five tigers in decrepit enclosures without proper enrichment, food, potable water, shelter, or sanitation; expose them to disease hazards from free-roaming animals; force them to engage in inappropriate interactions with the public; and deprive [them] of an appropriate social group. Defendants confine the lion [] without proper enrichment, food, shelter, housing, and sanitation; expose her to disease hazards from free-roaming animals; and subject her to unnatural and disruptive interactions with the public . . . . Defendants now [] confine [the lion] in complete social isolation.

ECF 1 ¶ 4.

PETA seeks to support its allegations with evidence obtained through witnesses' site visits to Tri-State Zoo. ECF 61 at 1. PETA, however, does not intend to rely on evidence obtained by "certain other witnesses who [also] visited Tri-State [Zoo]," and thus asserts that their log notes, memoranda, investigatory reports, and other correspondence remain protected. Assuming that this information even constitutes work product, because Federal Rule of Evidence

502(a) is satisfied, PETA must, nonetheless, produce these materials. First, PETA intentionally disclosed the evidence obtained at Tri-State Zoo from witnesses upon whose testimony it intends to rely upon at trial. *See* ECF 61 at 1. Second, the remaining undisclosed information concerns the same subject matter as the evidence PETA has produced – documents, notes, and correspondence evidencing the conditions at Tri-State Zoo and the manner in which Tri-State Zoo houses and cares for its animals. Finally, the undisclosed information, "in fairness," should be considered together, because it: (1) will provide a more complete picture of the evidence in this case; and (2) may contain exculpatory evidence applicable to Defendants' defenses. In sum, PETA "cannot choose to disclose only so much of allegedly privileged matter as is helpful to [its] case." *See Burlington Indus. v. Exxon Corp.*, 65 F.R.D. 26, 46 (D. Md. 1974) (citing 8 Wigmore, Evidence § 2327 (McNaughton Rev. 1961)).

To be clear, on or before August 10, 2018, PETA must produce to Defendants all draft memoranda, raw log notes, investigatory reports, and other correspondence written by PETA investigators (whether employees or volunteers) and third-party witnesses regarding their site visits to Tri-State Zoo. PETA, however, may withhold from production any documents and correspondence written by its attorneys. *See In re Grand Jury Subpoena*, 870 F.3d at 316 (Opinion work product "enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances.") (citation and internal quotations omitted).[3] Finally, to

---

[3] Even considering Defendants' arguments regarding the crime/fraud exception, Defendants have failed to make the "compelling showing" necessary for the production of opinion work product. *See In re Doe*, 662 F.2d 1073, 1080 (4th Cir. 1981) (stating that the Fourth Circuit is hesitant to create an absolute immunity for opinion work product, because "there may be rare situations, yet unencountered by this court, where weighty considerations of public policy and a proper administration of justice would militate against the nondiscovery of an attorney's mental impressions. Absent such a compelling showing, the attorney's opinion work product should remain immune from discovery."). In this case, the evidence collected at Tri-State Zoo regarding the manner in which it houses and cares for its animals is the only relevant evidence for PETA's claims under the ESA. Accordingly, the probative value of opinion work

the extent that PETA claims that attorney opinion work product is incorporated into the documents written by PETA's investigators and third-party witnesses, PETA shall permit this Court to "conduct an *in camera* review of the [] documents bearing evidence of the [] opinion work product," *In re Grand Jury Proceedings, Thursday Special Grand Jury Sept. Term, 1991*, 33 F.3d 342, 355 (4th Cir. 1994), and should provide proposed redactions of the "pure legal theories, impressions, or opinions in those documents*," In re Martin Marietta Corp.*, 856 F.2d 619, 626 (4th Cir. 1988).

## **CONCLUSION**

For the reasons set forth above, Defendants' motion (ECF 56) will be GRANTED in part and DENIED in part, and PETA's motion to file surreply (ECF 79) is GRANTED. A separate Order follows.

Dated: July 23, 2018                              /s/
                                                   Stephanie A. Gallagher
                                                   United States Magistrate Judge

---

product written by PETA's attorneys is negligible. Its relevance to the related civil actions filed by Defendants against PETA can be adjudicated in those cases.