**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC. | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. 1:17-cv-2148-PX |
| TRI-STATE ZOOLOGICAL PARK OF WESTERN MARYLAND, INC., *et al.* | * | |
| Defendants. | * | |
| | *** | |

## MEMORANDUM OPINION

Pending before the Court is People for the Ethical Treatment of Animals, Inc.'s ("PETA") request for cost and attorneys' fees in connection with its Motion for Sanctions (ECF Nos. 163, 213) and Defendants Tri-State Zoological Park ("Tri-State" or "Zoo"), Animal Park, Care & Rescue, Inc., and Robert Candy's Motion for Reconsideration (ECF No. 214). The Court finds no hearing is necessary. *See* Loc. R. 105.6. For the following reasons, Defendants' Motion for Reconsideration and Request for Hearing is DENIED. The Court awards PETA $56,655.77 in fees and costs to be paid jointly and severally by Defendants and their counsel.

## I.     Background

Roughly one year ago, this Court presided over a five-day bench trial concerning Defendants' violations of the Endangered Species Act, 16 U.S.C. § 1531. PETA prevailed in all respects. In a post-trial memorandum opinion, the Court laid out in painstaking detail the facts supporting the Court's determination and now incorporates all relevant facts here. *See* ECF Nos. 182, 184.

PETA's first two trial witnesses, investigators Colin Henstock and Chris Fontes, testified about several video recordings that they had taken of the deplorable conditions at the Zoo. These

videos had been the subject of several previous motions. *See* ECF Nos. 99-6 ¶ 3-4; 99-39 ¶ 3-4; 71-1 ¶ 10. Specifically, Defendants had argued, and the Court rejected, that the Court should dismiss the case because the investigators had taken video recordings in violation of the Maryland Wiretap Act, Md. Code, Cts. & Jud. Proc. §10-402(a), (c)(3), ("Wiretap Act"). ECF Nos. 71; 89 at 4-7; 102 at 11-14. Indeed, the Court wrote twice on this issue. The first time, the Court held that PETA "appear[ed] to have unlawfully recorded audio without first obtaining consent of those recorded[,]" and thus barred the use of "any video recorded with audio" in any future proceedings before this Court. ECF No. 102 at 13-14. However, on PETA's motion for reconsideration (ECF No. 107), the Court clarified that only such recordings that were, in fact, recorded in violation of the Wiretap Act -- that is, videos which included sound and were taken without the express or implied consent of all parties -- would be excluded. ECF No. 117 at 3-4. The Court also clarified that it would make such determination if and when such videos were offered into evidence. *Id.* at 4. The Court heard no further from the parties on this issue.

Three days before trial was scheduled to begin, Candy swore out felony criminal charges in Allegany County District Court against Henstock and Fontes. Candy specifically alleged that the very recordings at issue in the previous motions violated the Act. ECF No. 165. Candy also claimed falsely that this Court had already found "probable cause" to believe the investigators had violated the Act. *Id.*; ECF No. 163-4 at 7-8.

In response, PETA moved for sanctions against Defendants and Defendants' counsel, Nevin Young, for attempted witness intimidation. ECF No. 163. The Court held a hearing on the matter immediately before trial during which Candy's counsel admitted to assisting Candy in swearing out the criminal charges which included the mischaracterization of this Court's earlier rulings. Accordingly, the Court found that Candy, with Young's help, had purposely misled the

state court system to obtain criminal charges against PETA's first two witnesses on the eve of the civil trial.  The Court, therefore, instructed Candy and Young to make the Court's full written opinions available to the relevant state charging officials and reserved decision on PETA's sanctions motion until after trial.  ECF No. 188 at 6-15.

Despite the pending criminal charges, Fontes and Henstock elected to testify at the trial before this Court about their observations captured on scores of video recordings.  ECF Nos. 188 at 16, 51-123 (Henstock), 125-161 (Fontes).  Fontes and Henstock's separate criminal counsel was present in the courtroom and remained in the gallery during the entirety of their testimony.  *See* ECF No. 213-3 at 2.  The Court admitted the recordings as evidence and saw absolutely nothing that suggested a Wiretap Act violation had occurred.  ECF No. 188.  Tellingly, not once did Defendants, through counsel, object that *any* particular video had been obtained in violation of the Wiretap Act.  *See id.* at 73:15-20.

Defendants and counsel complied with the Court's order to provide the Court's opinions to the State's Attorney's Office.  ECF No. 173.  Candy also submitted a statement to the Office that read: "the court does not agree with the earlier understanding shared by my lawyer and me that these memoranda indicate by a preponderance of the evidence that the Wiretap Act was violated and has stated that disagreement for the record, and stated that the second Memorandum Opinion granting the Motion for Reconsideration revised the earlier finding."  *Id.*  Eventually, on February 7, 2020, the State dropped all charges against Fontes and Henstock.  ECF No. 209 at 1.

Based on the above events, the Court resolved the pending sanctions motion in PETA's favor, finding that PETA was entitled to recover reasonable attorneys' fees and costs for litigating the sanctions motion and securing criminal defense counsel for Fontes and Henstock.  ECF No. 212.  The Court instructed PETA to submit an itemization of such fees and costs in a

separate pleading.  *Id.*

PETA now asks this Court to award a total of $56,729.77, comprised of $41,704.75 for attorneys' fees for criminal defense counsel, $14,410.50 for the Motion for Sanctions, and $614.52 in costs.  ECF No. 213.  Defendants seek reconsideration of that order or, in the alternative, challenge the reasonableness of PETA's fee request.  ECF Nos. 214, 215.  For the following reasons, the Court denies Defendants' motion for reconsideration and awards PETA $56,041.25 in fees and $614.52 costs, to be paid jointly and severally by Defendants and Young.

## II.    Defendants' Motion for Reconsideration

The Court first turns to Defendants' motion to reconsider the propriety of imposing sanctions.  The motion is governed by Rule 59(e) of the Federal Rules of Civil Procedure.  *See Katyle v. Penn. Nat. Gaming, Inc.*, 637 F.3d 462, 470 n.4 (4th Cir. 2011).[1]  Pursuant to Rule 59(e), reconsideration is warranted only to (1) accommodate an intervening change in controlling law, (2) account for new evidence not previously available, or (3) correct a clear error of law or prevent manifest injustice.  *See United States ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002) (citing *Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)), *cert. denied*, 538 U.S. 1012 (2003).  Critically, a Rule 59(e) motion "may not be used to re-litigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment."  *Pacific Ins. Co.*, 148 F.3d at 403 (quoting 11 Wright, *et al.*, Federal Practice and Procedure § 2810.1, at 127–28 (2d ed. 1995)).  "In general, 'reconsideration of a judgment after its entry is an extraordinary remedy which

---

[1] PETA urges the Court to dismiss the motion as untimely because it was not filed within fourteen days pursuant to this Court's Local Rules for filing motions for reconsideration.  ECF No. 216 at 3 n. 1.  *See* Loc. R. 105.10.  The Court need not resolve whether the motion was timely because it fails on the merits.

should be used sparingly.'"  *Pacific Ins. Co.*, 148 F.3d at 403 (quoting Wright, *et al.*, *supra*, § 2810.1, at 124).

Defendants first argue, without any legal support, that this Court lacks jurisdiction to resolve Plaintiff's Motion for Sanctions after the entry of final judgment.  ECF No. 214 at 4-6. Defendants are incorrect.  "Sanction proceedings are collateral to the merits of the underlying case."  *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 144-45 (4th Cir. 2020) (citing *Cooter & Gell v. Hartmarx Corporation*, 496 U.S. 384, 395-96 (1990); *Willy v. Coastal Corp.*, 503 U.S. 131, 138 (1991)).  Thus, because a court "may consider collateral issues after an action is no longer pending," an otherwise proper sanctions award may be imposed even after the Court no longer retains jurisdiction over the merits of the case.  *See Fidrych*, 952 F.3d at 144-45.  This "jurisdictional" argument fails.

Defendants next contend, remarkably, that sanctions are improper because Defendants reasonably thought this Court had already found that PETA investigators violated the Wiretap Act.  ECF No. 214 at 6-12.  The Defendants press the *very falsehood* that invited the sanctions motion in the first instance.  The Court never made "factual findings" that the Act was violated. More to the point, to the extent the Court's first ruling was overbroad, the Court quickly corrected that confusion in a subsequent opinion.  The Court has already put this argument to bed.  ECF Nos. 117; 188 at 12-17.  A motion to reconsider is not the time to resurrect it.  *See Pacific Ins. Co.*, 148 F.3d at 403.  With no other grounds to support the motion, it is denied.

### III.    PETA's Supplement for Attorneys' Fees and Costs

PETA seeks $41,704.75 for fees paid to provide criminal counsel to Fontes and Henstock to defend against the state charges, $14,410.50 for preparing the sanctions pleadings, and $614.52 in related costs.  ECF No. 213 at 5.  To determine the reasonableness of the fees sought,

this Court employs the traditional lodestar method, ascertaining "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *see also Robinson v. Equifax Info. Servs., LLP*, 560 F.3d 235, 243 (4th Cir. 2009).  Twelve factors guide this "reasonableness" determination: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fee awards in similar cases.  *Robinson*, 560 F.3d at 243–44.

As proof of such fees, attorney timekeeping records remain "key to ascertaining the number of hours reasonably spent on legal tasks." *Two Men & A Truck/Int'l, Inc. v. A Mover Inc.*, 128 F. Supp. 3d 919, 925 (E.D. Va. 2015) (quoting *EEOC v. Nutri/Systems Inc.*, 685 F. Supp. 568, 573 (E.D. Va. 1988); *In re Outsidewall Tire Litig.*, 52 F. Supp. 3d 777, 788-89 (E.D. Va. 2014)).  Where counsel's documentation is inadequate, "the court may reduce the award accordingly." *Hensley*, 461 U.S. at 433.  Additionally, this Court's Local Rules provide presumptively reasonable hourly rates keyed to an attorney's years of experience.  *See* Loc. R., App. B(3); *Gonzales v. Caron*, Civ. No. CBD-10-2188, 2001 WL 3886979, at *2 (D. Md. Sept. 2, 2011) ("[G]enerally this Court presumes that a rate is reasonable if it falls within these ranges.").

Defendants broadly attack the reasonableness of the requested fees, arguing that because this request is "restitutionary," it is subject to a different standard than a traditional fee shifting case.  ECF No. 215 at 1-2.  Defendants provide no authority for this proposition and the Court discerns none.  Rather, the Court maintains inherent authority to assess attorneys' fees as a sanction for engaging in bad faith, vexatious, or oppressive litigation tactics.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991).  The Court will do so here.

### A.      Fees for Criminal Representation

The Court turns to the invoices submitted from Nathans & Biddle LLP and Rolle & DeLorenzo to support the requested fee.  ECF Nos. 213-3; 213-4; 213-5; 213-6; 213-8.  The Nathans and Biddle invoices reflect work performed by attorneys Larry Nathans, Booth M. Ripke, and Rachel Wilson, and paralegal Sam Biddle.  *See* ECF No. 213-2.  Defendants challenge Nathans' $550 hourly rate as "extremely high" for the Baltimore area and "unheard of" for an attorney in a rural area such as Cumberland, Maryland where the PETA investigators were criminally charged.  ECF Nos. 215 at 2-6; 215-1 ¶ 7; 215-2 ¶ 5.  Nathans billed at a discounted rate of $467.50, however, which falls within the presumptively reasonable range of $300-475 for lawyers with commensurate years of experience.  Further, contrary to Defendants assertion, the Court may consider the rates relevant to "the community in which the court sits," which commands rates higher than attorneys who practice in Cumberland.  *Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 317 (4th Cir. 1988).  In any event, the rates for all three attorneys fall within this Court's presumptively reasonable ranges, and so Defendants' contention is a nonstarter.  *Compare* Loc. R., App. B(3) *with* ECF No. 213-2 ¶ 4 (Attorney Booth M. Ripke, with twenty years of experience and a rate of $318.75, falling well within $300-475 range for attorneys barred for twenty years or more) *and id.* at ¶ 5 (Attorney Rachel L. Wilson, with five

7

years of experience and a rate of $212.50, falling well within the $165-300 range for lawyers admitted to the bar for five to eight years) *and id.* at ¶ 7, 13 (Paralegal Sam Biddle, with an hourly rate of $25, falling well below the presumptively reasonable range of $95-150 for paralegals).

Nathans & Biddle's invoices reflect that the firm expended a total of 97 hours on defending Fontes and Henstock against the criminal charges.  ECF Nos. 213-3, 213-4, 213-5, 213-6.  Defendants contend that the hours billed are "grossly excessive" given that the charges were evidently "groundless."  ECF Nos. 215 at 2-3; 215-1 ¶ 8; 214 at 12-13.  This is tortured logic at its best.  The very reason Defendants are facing sanctions is because they had the temerity to abuse the criminal process by filing such "groundless" charges against the PETA witnesses.  Defendants should not now escape the penalty for having sworn out such charges precisely *because* the charges were "groundless."

Further, say Defendants, the billing statements lack sufficient detail to evaluate the reasonableness of the time spent and thus must be rejected.  ECF Nos. 215 at 2-3; 215-1 ¶ 8.  To be sure, the invoices do not disclose substantive detail of the work performed, and for good reason.  Fontes and Henstock, accused of serious crimes, maintained a Fifth Amendment privilege against self-incrimination for the pendency of the criminal case.  Their defense counsel, above all, must protect that privilege vigorously and avoid memorializing the particulars of their due diligence so as to preserve their clients' Fifth Amendment protections.  This is especially the case where counsel knew at the outset that the invoices would have to be disclosed in connection with this sanctions motion.  Thus, to the extent Defendants grouse about the lack of detail in the billing records, this is a problem of their own making that began when they filed baseless criminal charges against Henstock and Fontes.

That said, the invoices, combined with Nathans' sworn declaration attesting that the work performed was "necessary, appropriate, and . . . not redundant or duplicative," is sufficient to support the reasonableness of the requested amount.  ECF No. 213-2 ¶ 11.  While the invoices are light on substantive information, they do capture the date and tasks performed on behalf of the investigators, and the time devoted to each.  More to the point, the invoices make clear that all of the time was spent defending Fontes and Henstock, an undoubtedly labor-intensive representation when considering that reasonably diligent counsel would have to review, investigate, strategize and discuss the legality of *more than 70 related video recordings* to provide an adequate defense.  *See* ECF Nos. 99-39 ¶ 3-4; 71-1 ¶ 2; 71-3.  The Court finds that the hours billed to defend against felony charges of this nature are reasonable and awards PETA $41,339.75 in fees for Nathans & Biddle LLP's representation.

PETA also seeks $365 in fees for the 1.1 hours spent by outside counsel Rolle & DeLorenzo to retrieve and review the criminal summonses.  ECF 213-7 ¶ 3.  The fees of attorney Christopher M. Rolle and paralegal Kim Fahrner, each with more than twenty years of experience, are within this Court's presumptively reasonable range at $400 and $150 respectively.  *Compare* Loc. R., App. B(3) ($300-475 range for attorneys barred for twenty years or more; $95-150 for paralegals) *with* ECF No. 213-7 ¶ 2, 4.  The invoices reflect that Fahrner spent .3 hours retrieving the subpoenas, and Rolle spent .8 hours arranging for pickup and reviewing them.  ECF No. 213-8.  The Court is persuaded that the fees and professional time spent are reasonable.  Accordingly, the Court awards $365.00 in fees associated with Rolle & DeLorenzo's services.

B.       **Attorney Fees for Sanctions Motion**

PETA seeks a total recovery of $14,410.50 in attorneys' fees for preparing and filing their Motion for Sanctions and subsequent replies. Specifically, PETA requests $5,737.50 for the work performed by the PETA Foundation's in-house counsel, James Erselius, and $8,673 for outside counsel from Zuckerman Spaeder LLP, Marcos Hasbun, Adam Abelson, and paralegal Christine Vandergriff. ECF No. 213 at 5. Defendants respond that because Erselius is a salaried staff attorney, his hourly rate should be calculated based on his salary, which would almost certainly result in a rate lower than $225 per hour. ECF Nos. 215 at 3-4; 215-1 ¶ 11. This argument misstates the law for attorneys employed by non-profit legal services organizations. It is well-settled that litigation counsel employed by a nonprofit organization are entitled to fees at a prevailing market rate. *Prison Legal News v. Stolle,* 129 F. Supp. 3d 390, 397 (E.D. Va. 2015), *aff'd*, 681 F. App. 182 (4th Cir. 2017) (citing *Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 319 (4th Cir. 1998)). Plaintiff contends that $225 is an appropriate rate for James Erselius based on his years of practice and subject-matter expertise. The Court finds that Erselius' rate is within the presumptively reasonable range.

As for counsel at Zuckerman Spaeder, Hasbun's discounted rate of $460 is also within this Court's presumptively reasonable range and nothing in the record disturbs the presumption. ECF Nos. 213 at 5; 213-9 ¶ 2. *See* Loc. R., App. B(3) ($300-475 for lawyers admitted to the bar for twenty or more years). And although senior paralegal, Christine Vandergriff, normally bills at a rate far exceeding the $95-150 presumptively reasonable range, PETA has capped its request at a rate of $150. The Court accepts this rate as reasonable given Vandergriff's years of experience. ECF No. 213-9 ¶ 5. Finally, as to Adam Abelson, although Zuckerman Spaeder provides several reasons to justify his $360 hourly rate, ECF Nos. 213 at 10; 213-9 ¶ 3, the Court will confine itself to the presumptively reasonable range in large measure to account for

Abelson's years of experience falling in the low end of the banded range.  Loc. R., App. B(3) ($225-$350 for lawyers admitted to the bar for nine to fourteen years.).  Abelson's hourly rate will be fixed at $350.

Turning next to the reasonableness of time expended preparing and filing PETA's sanctions motion, collectively counsel spent 46.3 hours on its Motion for Sanctions and subsequent reply as follows:  25.5 hours by Erselius who researched and drafted the motions for sanction, reply, and certain attached declarations, and 20.8 hours by outside counsel Zuckerman Spaeder who reviewed and revised the motions (Christine L. Vandergriff – 0.5 hours, Adam Abelson – 7.4 hours, Marcos E. Hasbun – 12.9 hours).  ECF Nos. 213-15; 213-10; 213-11; 213-12; 213-14.  Defendants do not challenge the hours expended by Zuckerman Spaeder, but instead contend that Erselius' time was "grossly excessive" and reflects his inexperience.  ECF No.  215-1 ¶ 10.  PETA responds that the time spent is reasonable in light of the emergency nature of the pleading that had to address a lengthy procedural and factual history related to PETA's first witnesses at trial.  ECF No. 217 at 5-6.  The Court agrees with PETA.

First, PETA correctly underscores that these hours are in line with other attorneys' fees awards granted in other matters.  *See, e.g.*, *Wilson v. Lakner*, Civ. No. PJM-04-2110, 2006 WL 8457061 (D. Md. June 14, 2006) (finding 56.9 hours to be reasonable for motion for sanctions and its related reply brief); *Flame S.A. v. Indus. Carriers, Inc.*, No. 2:13-cv-658, 2014 WL 7185199, at *12, 14  (E.D. Va. Dec. 16, 2014) (awarding $19,797 in connection to 52.7 hours of work spent in pursuing a motion for sanctions).  Second, the Court identified no duplicative billing.  Third, the lion's share of the drafting had been completed by Erselius, the most junior attorney whose lower hourly rate reinforces a prudent decision to have junior rather than senior counsel draft the pleading.  Lastly, PETA does not seek to recapture the fees for time spent on

responding to the Court's order to itemize such fees and costs, although it could reasonably have done so.  *See Saman v. LBDP, Inc.*, Civ. No. DKC-12-1083, 2013 WL 6410846, at *7 (D. Md. Dec. 6, 2013) (citing *Ganey v. Garrison*, 813 F.2d 650, 652 (4th Cir. 1987)) ("[I]t is settled law in this circuit that a party can recover expenses incurred in preparing a motion for attorneys' fees.").  Accordingly, the Court finds PETA's fees reasonable and awards $14,336.50 for preparing the sanctions motion.

### C.    Costs

PETA's invoices reflect $614.52 in costs incurred for photocopying, delivery, postage, travel, and related costs.  After careful review of the attorney billing statements, the Court finds the costs reasonable and will be assessed as part of the sanctions award.

### D.    How Sanctions Must be Paid

A final word on how the fees and costs shall be paid.  Although Candy swore out the bogus criminal charges, his counsel, Nevin Young, actively assisted, daresay encouraged, such shenanigans.  ECF No. 188 at 8-10.  Clearly, counsel and clients worked together, one providing advice and endorsement, the other executing the play.  Further, Candy swore out these charges as the "owner of Tri-State Zoological Park of Western Maryland, Inc.," ECF No. 163-4 at 6, but all Defendants sought to benefit from such efforts to silence the PETA's critical first witnesses on the video evidence they had obtained.  For this reason, the Court finds Defendants and Young equally responsible and so orders that Defendants and Young are jointly and severally liable for payment.

12

## IV.     Conclusion

For the foregoing reasons, the Court denies Defendants' Motion for Reconsideration and awards PETA attorneys' fees in the amount of $56,041.25 and costs in the amount of $614.52, to be paid jointly and severally by Defendants and Defendants' counsel, Nevin Young.


_____10/29/20_____                        _____/S/_____
Date                                                              Paula Xinis
                                                                   United States District Judge