IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
–Southern Division–

PEOPLE FOR THE ETHICAL
TREATMENT OF ANIMALS, INC.,

*Plaintiff*

–v–

TRI-STATE ZOOLOGICAL PARK OF
WESTERN MARYLAND, INC., *et al.*,

*Defendants.*

Case No. PX 17–2148

**PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION FOR ATTORNEYS' FEES**

Plaintiff People for the Ethical Treatment of Animals, Inc. ("PETA") submits this Reply in support of its Motion for Attorneys' Fees ("Mot.") ECF No. 227, which seeks an award for reasonable attorneys' and experts' fees, and nontaxable costs incurred in connection with this matter. Defendants Tri-State Zoological Park of Western Maryland, Inc., Animal Park, Care & Rescue, Inc., and Robert Candy (collectively "Tri-State") do not dispute that PETA's attorneys billed reasonable hourly rates for their work, or dispute the reasonable costs and experts' fees incurred in connection with this matter. Rather, Tri-State contests the amount of time spent on various tasks, the number of attorneys who worked on specific aspects of this case, billing justification under the Court's Local Rules, and the rate at which PETA seeks reimbursement for work performed by Zuckerman Spaeder, LLP's ("Zuckerman's") paralegals. Tri-State also requests that this Court reduce the fee award to which

– 1 –

PETA is entitled to some amount not exceeding $300,000—an arbitrary amount based on a crude estimate of the amount billed by Tri-State's attorney and one captive-animal Endangered Species Act ("ESA") lawsuit in a completely different market, *i.e.*, Iowa, that has little to no bearing on the "lodestar" in this case.

As explained below, PETA has removed one time entry from its request in the amount of $3,325. In light of this adjustment, PETA's requests reimbursement for $1,347,236.66 in reasonable fees and costs, which it is entitled for achieving excellent results, vindicating important Congressional polices, and advancing the public interest in protecting endangered and threatened animals from mistreatment and death.

**I.     PETA's request for fees is reasonable.**

PETA has provided detailed time records documenting the various tasks each attorney performed to prevail at every stage of this matter. To rebut the reasonableness of PETA's request, Tri-State is required to "submit . . . evidence challenging the accuracy and reasonableness of the hours charged." *Blum v. Stenson*, 465 U.S. 886, 892 n.5 (1984). Yet Tri-State failed to offer *any* support for its suggested deductions, or to rebut the reasonableness of the hours detailed in PETA's records.

Instead, Tri-State proposes several arbitrary (and in some cases hard to decipher) reductions to PETA's fee request. As explained below, these arbitrary proposals are based on no supporting evidence and are simply not justifiable.

### A. The time PETA's attorneys spent on the tasks identified by Tri-State were reasonable and compensable.

Tri-State raises several unsupported objections to PETA's counsel's billing records both in its Response to Plaintiff's Motion for Attorneys' Fees ("Resp."), ECF No. 230, and Exhibit A thereto, ECF No. 230-1. Each category of objections raised by Tri-State is addressed below. As an initial matter, however, Tri-State should not be surprised at the numbers of hours it took PETA to litigate this case, particularly in light of Tri-State's aggressive litigation strategy. *Morataya v. Nancy's Kitchen of Silver Spring, Inc.*, No. GJH-13-01888, 2016 WL 6634856, at *6 (D. Md. Nov. 8, 2016) ("[A] defendant 'cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.'") (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986)); *Cataphora Inc. v. Parker*, 848 F. Supp. 2d 1064, 1070 (N.D. Cal. 2012) ("[I]t was Defendants who pursued an aggressive litigation strategy. It is therefore not surprising that Plaintiff was forced to incur the fees for which it seeks reimbursement.")

First, Tri-State challenges the amount of time attorney Zeynep Graves spent preparing for the June 28, 2019 motions hearing. *See* Resp., ECF No. 230 at 3 (challenging as "not necessary" and "overwork" the "54.2 hours [Ms. Graves spent] on preparation for the summary judgment motions hearing"). The hours counsel spent preparing to argue PETA's motion for summary judgment and assisting with the preparation for other then-pending motions was necessary and reasonable. As Ms. Graves' billing entries clearly state, the preparation time at issue was expended on *seven* motions, *see* ECF No. 227-2 at 126–27, including robust, fact-intensive cross

motions for summary judgment, which, exclusive of declarations and supporting exhibits, comprised 142 pages of briefing, *see* ECF Nos. 99, 114, 120, 122. The reasonableness of the amount of time Ms. Graves spent is further supported by Tri-State's late-disclosed expert report and Defendant Candy's "sham affidavit," which further complicated the already fact-intensive dispositive motion. *See, e.g.*, Pl.'s Mem. in Supp. of Its Mot. to Strike, ECF No. 119-1. The time spent by Ms. Graves is also in line with time spent by counsel in other complex cases. *See, e.g., Latta v. Otter*, No. 1:13-CV-00482-CWD, 2014 WL 7245631, at *8–9 (D. Idaho Dec. 19, 2014) (finding it reasonable to spend 137.6 hours preparing for and attending a 45-minute hearing on the parties' dispositive motions, 55.9 hours of which were billed by attorneys who did not argue).[1]

Second, Tri-State takes issue with the manner in which PETA's counsel prepared for the June 28, 2019 motions hearing. *See* Resp., ECF No. 230 at 2–3 (challenging as "unnecessary" "the 'mock summary judgment' hearing"). Preparing for oral argument, including by participating in a moot argument, is compensable. *See 1899 Holdings, LLC v. 1899 LLC*, No. CCB-12-297, 2015 WL 6560014, at *5 (D. Md. Oct. 27, 2015) (taking no issue with time attorney spent "preparing for and participating in a moot appellate argument"). Thus, Tri-State's objection to the

---

[1]   Tri-State also objects to the 4.5 hours Ms. Graves spent drafting an *ex parte* settlement letter for mediation purposes. Tri-State does not appear to dispute the reasonableness of this entry, but simply notes that it "is a very strange entry," and questions "why [it] was . . . done[.]" *See* ECF No. 227-2 at 125 (complete time entry); ECF No. 230-1 at 97 (Tri-State's objections thereto). The *ex parte* letter drafted by Ms. Graves to Magistrate Judge Copperthite was *required* by court order. *See* Order Scheduling Second Settlement Conference, ECF No. 142.

manner in with PETA's counsel prepared for this important hearing should be rejected.

Third, Tri-State challenges the hours PETA's attorneys spent related to its experts' robust reports. *See, e.g.*, Resp., ECF No. 230 at 3; ECF No. 230-1 at 108–09 (noting time spent on expert reports was "excessive" and "should have been done by" PETA's expert). It is completely reasonable, however, for counsel to assist with expert reports such as by raising questions, making comments, adding record citations, and otherwise ensuring that experts' reports complied with the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 26, Advisory Committee Notes ("Rule 26(a)(2)(B) does not preclude counsel from providing assistance to experts in preparing the reports."). Additionally, the robust nature of Dr. Haddad and Mr. Pratte's reports—which were 114 and 127 pages, respectively, *see* ECF Nos. 155-2 and 155-3—underscore the reasonableness of the time PETA's counsel spent finalizing the reports.

Fourth, Tri-State objects to the compensability of the time PETA spent successfully defeating the Maryland Zoo's Motion to Quash Subpoena, ECF No. 42, which the Maryland Zoo filed after receiving a lemur from Tri-State. *See, e.g.*, ECF No. 230-1 at 21 (arguing that "Tri-State should not be responsible for work"). But through its narrowly tailored subpoena, PETA sought "documentation that [wa]s relevant to the condition of the lemur at the time [he] left the possession of Defendant Tri-State and to the appropriateness of treatment by Tri-State." Order Re: Dispute, ECF No. 51 at 3. And the fruits of this discovery battle were subsequently designated by the parties as a *joint* trial exhibit, Joint Exhibit List, ECF No. 155-1 at JX6, and

were cited by the Court in its memorandum opinion. Mem. Op., ECF No. 182 at 34–35. Because the Maryland Zoo clearly had discoverable information, PETA should be entitled to recover its fees for relevant third-party discovery. *See North Dakota v. Heydinger*, No. 11-CV-3232 (SRN/SER), 2016 WL 5661926, at *22–23 (D. Minn. Sept. 29, 2016), *aff'd sub nom. North Dakota v. Lange*, 900 F.3d 565 (8th Cir. 2018) (holding that time spent on third-party motion to quash was compensable under federal fee-shifting provision after defendants disclosed third-party as likely to have discoverable information).

Last, Tri-State objects to the reasonable hours Mr. Abelson and Ms. Hawks spent preparing to cross examine witnesses whom Tri-State designated in the parties' Joint Pretrial Order. *See* Proposed Joint Pretrial Order, ECF No. 155 at 11–13 (designating John Carden and Dr. Gale Duncan as "hybrid fact/expert witnesses or potentially hybrid witnesses"); ECF No. 230-1 at 6, 84 (disputing as "excessive" the 8 hours Ms. Hawks spent preparing to cross examine Mr. Carden and 8 of the approximately 17.5 to 25 hours Mr. Abelson spent preparing to cross examine Dr. Duncan). Of course, the hours PETA's attorneys spent preparing to cross examine these witnesses—who were not called to testify at trial—could have been avoided. But Tri-State did not reveal that Mr. Carden and Dr. Duncan would not be present at trial until the third and fourth days of trial, respectively. *See* ECF Nos. 169 at 192:23-25 & 170 at 74:10-11.

For the reasons stated above, Tri-State's arbitrary and unjustified reductions should be rejected.

### B. PETA's fee request was calculated in accordance with this Court's Local Rules.

Tri-State attempts to characterize a number of PETA's time entries—including entries for intraoffice communications, travel and deposition—as unjustified under the Local Rules. Tri-State's position is largely unsupported and mischaracterizes many of PETA's time entries. However, PETA agrees to reduce the amount of fees for which it seeks reimbursement by $3,325 to account for the time its attorney Mr. Conor O'Croinin spent at a key deposition taken by a second attorney.

First, Tri-State argues that many of "PETA's disallowed time entries are for intraoffice conferences" purportedly "not allowed by the Local Rules." Resp., ECF No. 230 at 2. Contrary to Defendants' unsupported position, under the Local Rules, "[c]ompensation may be paid" for "intraoffice conferences" where "justified for specific purposes such as periodic conferences of defined duration held for the purpose of work organization, strategy, and delegation of tasks in cases where such conferences are reasonably necessary for the proper management of the litigation." Local Rule App'x B.2(d) (D. Md. 2018). As made clear in PETA's Motion and supporting declarations, "PETA is not seeking compensation (by either writing off or not billing in the first instance) for intra-office communications unrelated to strategy, work organization, or delegation of tasks." Pl.'s Mem. in Supp. of Its Mot. for Att'ys Fees & Costs ("Fees Mem."), ECF No. 227-1 at 20–21. PETA does, however, seek reimbursement for intraoffice communications "that counsel of record routinely held throughout this case, which were absolutely necessary to manage the case, delegate tasks amongst

team members, avoid duplication, and prepare for trial." *Id*. at 20 n.9. Under Local Rule App'x B.2(d), such intraoffice communications are compensable.

Second, Tri-State disputes the compensability of the time billed for depositions. Resp., ECF No. 230 at 2. Tri-State's annotations on Exhibit A to its Response Brief appear to highlight two instances where attorney Conor O'Croinin attended, but did not take, depositions. *See* ECF No. 230-1 at 19. PETA already deducted the time Mr. O'Croinin spent attending Mr. Candy's 30(b)(6) deposition, and therefore did seek reimbursement for his attendance. ECF No. 227-2 at 25 (reducing the "Reasonable Fees Requested" from $1,978 to $0). Although the Local Rules allow more than one lawyer to be compensated for attending depositions upon a showing of a valid reason, PETA agrees to deduct the total amount it seeks here by $3,325 (9.5 hours at $350/hour) to account for the time Mr. O'Croinin spent assisting with the deposition of Tri-State's then-veterinarian, Dr. Fox. *See Id*.

Last, Tri-State challenges several entries for travel time. Under the Local Rules, "[u]p to two (2) hours of travel time (each way and each day) to and from a court appearance, deposition, witness interview, or similar proceeding that cannot be devoted to substantive work may be charged at the lawyer's hourly rate." Local Rule App'x B.2(e)(ii) (D. Md. 2018). "Time spent in long-distance travel above the two (2) hours limit each way, that cannot be devoted to substantive work, may be charged at one-half of the lawyer's hourly rate." *Id*. App'x B.2(e)(iii). As PETA stated in its motion, "where travel time could not be devoted to substantive work, PETA reduced time that exceeded two hours by half." Fees Mem., ECF No. 227-1 at 21. Defendants

do not point to a single time entry where travel exceeding two hours that could not be devoted to substantive work was not reduced by half. *Compare, e.g.*, ECF No. 230-1 at 85 (challenging several travel time entries of attorney Martina Bernstein as "not billable") *with* ECF No. 227-2 at 110 (reducing in the "Reasonable Fees Requested" column by half all travel time exceeding two hours that could not be devoted to substantive work).

      **C.**      **The number of attorneys representing PETA were reasonable.**

Without any support, Tri-State also objects as "duplicate entr[ies]" to all the time Mr. Abelson, Ms. Hawks, and Ms. Graves spent trying this matter and preparing in between trial days. *See* ECF No. 230-1 at 2, 78, 96; *see also* Fees Mem., ECF No. 227-1 at 18 n.8 (noting the "attending trial" time entries include preparation time in between trial days). Tri-State's proposed reduction, implying after the fact that less effort could have achieved the same results, is unreasonable. Contrary to Tri-State's assertion, Resp., ECF No. 230 at 2, the Local Rules permit more than one lawyer to be compensated for attending trial. *See* Local Rule App'x B.2(c) n*("There is no guideline as to whether more than one lawyer for each party is to be compensated for attending trial."). Each member of PETA's trial team was responsible for distinct tasks that did not amount to unnecessary duplication of effort. For example, among other efforts, Ms. Hawks delivered opening statements, examined PETA's corporate designee, and was prepared to cross examine Mr. Carden; Ms. Graves examined PETA's three fact witnesses; Mr. Abelson examined PETA's animal behavior expert, Mr. Pratte, and was prepared to cross examine Dr. Duncan; and Mr. Hasbun

examined PETA's veterinary expert, Dr. Haddad, cross examined Mr. Candy, and delivered closing arguments. Suppl. Graves Decl. ¶ 3.

Tri-State likewise challenges the time Mr. O'Croinin spent attending the first mediation conference in this matter, which was also attended by Ms. Hawks. ECF No. 230-1 at 23 (challenging "[d]uplicate entry with others"). PETA reasonably seeks reimbursement for the time two of its counsel spent trying to settle this matter, each of whom played distinct rolls at the conference. Mr. O'Croinin, as Maryland counsel, provided his expertise in complex litigation. Hasbun Decl., ECF No. 227-4 ¶ 4. Ms. Hawks, as Deputy General Counsel for Litigation at the PETA Foundation, had authority from her client to enter into a binding settlement. Graves Decl, ECF No. 227-6 ¶ 3; Suppl. Graves Decl. ¶ 2. *See also* Local Rule App'x B.2(c) n.*† (noting that departure from general guideline that only one lawyer for each party be compensated for attending hearings "would be appropriate upon a showing of a valid reason").

Tri-State's unsupported objections to the manner in which PETA staffed this case should be rejected.

## II. Tri-State's suggested fee amount of $300,000 is arbitrary and should be rejected.

PETA is entitled to the reasonable fees and costs it actually incurred to prosecute this matter—not the arbitrary amount proposed by Tri-State. In support of its assertion that an amount not exceeding $300,000 is an "appropriate" fee award here, Tri-State provides a rough estimate of the amount of fees it incurred in this matter, and points to one Northern District of Iowa ESA case. Resp., ECF No. 230 at 5–6. Neither benchmark has any meaningful bearing on PETA's lodestar here.

First, Tri-State provides *no* evidence supporting the rough estimate opposing counsel billed in this matter. Resp., ECF No. 230 at 6 (representing that "the total amounts billed to Defendants in this case were over $200,000 but not more than $300,000"). Although comparing hours opposing parties spent on particular tasks can sometimes help assess the reasonableness of the hours expended, Tri-State did not disclose the number of hours its counsel spent litigating this case. Even if Tri-State had provided records to support its billing, "[c]omparison of the hours spent in particular tasks by the attorney for the party seeking fees and by the attorney for the opposing party . . . does not necessarily indicate whether the hours expended by the party seeking fees were excessive." *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1151 (9th Cir. 2001).

Indeed, it is reasonable that PETA incurred more fees than Defendants did in this matter. Among other things, PETA had the burden of proof without the same access to critical facts, and it retained qualified experts to author robust reports and provide important opinion testimony. The parties' litigation strategies obviously differed in several respects. However, without any benchmarks regarding the amount of time Tri-State's counsel spent on particular tasks, a crude estimate of the total amount billed sheds no light on the reasonableness of the hours PETA was forced to spend to successfully litigate this case. *See, e.g., Ferland,* 244 F.3d at 1151 (cautioning that any comparison of hours spent must control for certain factors including the "possibility that the prevailing party's attorney[s]—who, after all, did prevail—spent more time because [they] did better work").

Second, Tri-State's comparison of PETA's fee request to the fee petition filed in *Kuehl v. Sellner,* 161 F. Supp. 3d 678 (N.D. Iowa 2016), *aff'd*, 887 F.3d 845 (8th Cir. 2018), should not disturb the lodestar figure here. Although the cases involved similar legal questions, the two cases were litigated in different markets and in vastly different manners. For example, unlike Defendants here, the defendants in *Kuehl* filed no pretrial dispositive motions, *Daubert* motions, motion for sanctions, or attempt to disqualify the presiding judge. *See generally Kuehl,* 161 F. Supp. 3d 678 (N.D. Iowa 2016) (Case docket: 6:14-cv-02034). Additionally, the plaintiffs in *Kuehl* filed only one *Daubert* motion, and neither party was required to litigate any discovery-related motions. *Compare id. with* Fees Mem., ECF No. 227-1 at 2 (listing the various motions PETA was forced to litigate).

Further, the plaintiffs in *Kuehl* did not seek fees for a large portion compensable work done in that case. For example, plaintiffs did not seek fees for expert witnesses, local counsel who "provided support throughout the case," or approximately 160 hours of *pro bono* assistance provided by outside counsel and "numerous law clerks and paralegals." Resp. Exhibit B, ECF No. 230-2 at 15, 20–21, 35. Additionally, plaintiffs' counsel "voluntarily reduced their time . . . by approximately 16% to 19%." *Id.* at 15. The hourly rates sought by plaintiffs' attorneys in *Kuehl* were also much lower than the presumptively reasonable rates at which PETA seeks reimbursement in this matter. *Compare id.* at 19 (hourly rates requested ranging from $200 to $275) *with* Fees Mem., ECF No. 227-1 at 8 (hourly rates requested for attorneys ranging from $225 to $475).

Because of these significant differences, the fees sought by the prevailing plaintiffs in *Kuehl* do not provide this Court with a reasonable benchmark by which to measure the reasonable fees sought by PETA in this case.

### III. Tri-State's presumed hourly rate for paralegals should not disturb the reasonable rate at which PETA seeks reimbursement.

As explained in PETA's motion, PETA seeks reimbursement for time spent by Zuckerman's paralegals, Christine Vandergriff and Bobbi Camp, at a rate of $150/hour, reduced to fall within the range provided by the Local Rules. *See* Fees Mem., ECF No. 227-1 at 8–9; Hasbun Decl., ECF No. 227-4 at ¶ 17. The requested rate for Ms. Vandergriff and Ms. Camp—who have 20 and 30 years of paralegal experience, respectively—is well below Zuckerman's prevailing rates, as well as the discounted rates PETA paid in this matter. Fees Mem., ECF No. 227-1 at 8; Hasbun Decl., ECF No. 227-4 at ¶ 12. As to Tri-State's suggested rate of $75/hour, Tri-State provides no evidence establishing that as the prevailing rate; it most certainly is not, as it falls below even the bottom of the below-market range set forth in the Local Rules. Local Rule App'x B.3(f) (providing a presumptively reasonable range of $95 to $150 for paralegals). *See also* Fees Mem., ECF No. 227-1 at 13–14.

### IV. PETA is entitled nontaxable costs and expert fees, the reasonableness of which is undisputed.

PETA seeks reimbursement of $83,485.66 for reasonable nontaxable costs and expert witness fees. *See* Fees Mem., ECF No. 227-1 at 22–23. Because Tri-State does

not dispute the reasonableness of this request, *see* Resp., ECF No. 230 at 1–6, PETA should be reimbursed in full for these reasonable fees and costs.[2]

## V. Conclusion

For the foregoing reasons, this Court should grant PETA's motion and award $1,347,236.66 in fees and costs.

Date:  April 14, 2021
       Baltimore, Maryland

Respectfully submitted,

/s/ Adam B. Abelson
Adam B. Abelson (#29532)
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, Maryland 21202
(410) 332–0444; (410) 659–0436 (fax)
aabelson@zuckerman.com

Marcos E. Hasbun (Admitted Pro Hac Vice)
ZUCKERMAN SPAEDER LLP
101 East Kennedy Boulevard, Suite 1200
Tampa, Florida 33602–5838
(813) 221–1010; (813) 223–7961
mhasbun@zuckerman.com

Caitlin Hawks (Admitted Pro Hac Vice)
Zeynep Graves (Admitted Pro Hac Vice)
PETA Foundation
2154 West Sunset Boulevard
Los Angeles, CA 90026
(323) 210–2263; (213) 484–1648 (fax)
caitlinh@petaf.org
zeynepg@petaf.org

*Counsel for Plaintiff People for the Ethical Treatment of Animals, Inc.*

---

[2]  PETA's Bill of Costs, ECF No. 225, is also unopposed.