IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC. | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 1:17-cv-02148-PX |
| | * | |
| TRI-STATE ZOOLOGICAL PARK OF WESTERN MARYLAND, *et al.*, | * | |
| Defendants. | * | |
| | *** | |

## MEMORANDUM OPINION

Pending before the Court is People for the Ethical Treatment of Animals, Inc.'s motion for attorneys' fees and costs. *See* ECF No. 227. The issues are fully briefed, and no hearing is necessary to resolve this motion. *See* D. Md. Loc. R. 105.6. For the following reasons, the motion is GRANTED in substantial part.

### I.     BACKGROUND

On July 31, 2017, Plaintiff People for the Ethical Treatment of Animals, Inc. ("PETA") sued Defendants Tri-State Zoological Park of Western Maryland, Inc., Animal Park, Care & Rescue, Inc., and Robert L. Candy (collectively "Tri-State"), alleging violations of the Endangered Species Act, 16 U.S.C. § 1531 *et seq.* (the "ESA"). PETA is a Virginia-based nonprofit organization dedicated to the wellbeing of animals. *See* ECF No. 1 ¶ 11. Tri-State operates a zoological park in western Maryland that previously was home to three species protected by the ESA—lions, tigers, and lemurs. *See* ECF No. 182 at 1; *PETA v. Tri-State Zoological Park of Western Md., Inc.*, 424 F. Supp. 3d 404, 407–08 (D. Md. 2019). PETA alleged that Tri-State had long subjected these animals to harm and harassment by housing them in squalor, feeding them terribly, and giving them no meaningful care or enrichment, all in

violation of the ESA.  *See* ECF No. 182 at 2.

After years of litigation, 39 pretrial motions, several pretrial hearings, and a bench trial lasting six days, the Court ruled in favor of PETA on all counts and ordered that the covered animals still on premises be relocated.  *See* ECF No. 182 at 45.  Pursuant to the ESA's fee-shifting provision, PETA now seeks $1,347,236.66 in attorneys' fees and costs.

### A. The ESA's Fee-Shifting Provision

Like many protectionist statutes, the ESA recognizes the necessity of fee-shifting provisions to encourage assumption of arduous and often costly litigation.  *See* Jody Freeman, *The Private Role in the Public Governance*, 75 N.Y.U. L. Rev. 543, 552–53 (2000); *see also Animal Welfare Inst. v. Beech Ridge Energy LLC*, 675 F. Supp. 2d 540, 544 (D. Md. 2009), *amended*, No. 09-1519 (RWT), 2010 WL 11484179 (D. Md. Jan. 26, 2010).  Under the ESA, therefore, the prevailing party is entitled to recover "costs of litigation (including reasonable attorney and expert witness fees)" from the non-prevailing party "whenever the court determines such award is appropriate."  *See* 16 U.S.C. § 1540(g)(4); *Animal Welfare Inst.*, 675 F. Supp. 2d at 545.  In practice, courts routinely award litigation costs to plaintiffs who have achieved "some success, even if not major success."  *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 688 (1983).

### B. This Litigation

Fairly read, Tri-State implemented an aggressive and unremitting defense strategy throughout the litigation.  Tri-State first moved to dismiss the Complaint for lack of standing and on the merits.  *See* ECF No. 15.  The then-presiding judge, the Honorable Marvin J. Garbis, denied that motion.  *See* ECF No. 23.  Next, Tri-State moved for Judge Garbis' recusal, which was also denied.  ECF Nos. 25, 35.[1]  Tri-State later moved for judgment on the pleadings, rehashing the same arguments made in support of its motion to dismiss.  *See* ECF Nos. 55, 102.

---

[1] This Court assumed responsibility for this case on July 9, 2018, following Judge Garbis' retirement.

The Court denied that motion, too. *See* ECF No. 102 at 4 ("The Court will not allow Defendants a second bite at the dismissal apple.").

Discovery was likewise contentious. *E.g.*, ECF No. 34 at 3 (noting counsel had not "demonstrate[d] an appropriate level of attention to the case or professional courtesy to Plaintiff's counsel."). It spawned several rounds of motions to compel, strike, exclude improper expert testimony, and for sanctions. *See, e.g.*, ECF Nos. 62, 64, 67, 71, 94–97. At the close of discovery, the parties each filed voluminous cross motions for summary judgment (ECF Nos. 99 & 114), and PETA moved to strike three of Tri-State's experts (ECF Nos. 94–96). The Court held oral argument on those motions, which lasted approximately two hours. *See* ECF No. 133. PETA largely prevailed. *See* ECF No. 134. The Court excluded Tri-State's experts and denied Tri-State's motions. *Id.* After supplemental briefing, the Court granted in part PETA's motion for summary judgment, finding that one "big cat," Cayenne, was subjected to a "take" under the ESA. *See* ECF No. 138 at 11–13. The remaining allegations proceeded to trial. *See id.* at 1.

As trial approached, PETA successfully moved to compel site inspections over Tri-State's objection. *See* ECF No. 148. PETA also successfully moved *in limine* to exclude improperly offered testimony (ECF No. 151) and evidence not previously produced in discovery (ECF No. 152). Tri-State, for its part, sunk to new lows. On the eve of trial, it brazenly attempted to manufacture criminal charges against PETA's investigators. *See* ECF Nos. 163, 166, 212. Defendant Robert L. Candy, the zoo's owner and founder, swore out criminal charges against investigators Christopher Fontes and Colin Henstock for criminal violations of the Maryland Wiretap Act based on video footage the investigators had taken of the zoo several years before. *See* ECF No. 212. The Court eventually granted PETA's sanctions motion to address Tri-State's obstructionist tactics (ECF No. 212) and, later, denied Tri-State's motion to

reconsider. *See* ECF No. 188 at 15–16; ECF No. 212; ECF No. 219.

The parties next proceeded to a six-day bench trial. PETA called four lay witnesses (ECF Nos. 166, 168–71, 175) and introduced over one hundred exhibits (ECF No. 176). PETA also called two experts, veterinarian Dr. Kim Haddad and zoologist Jay Pratte, each of whom testified for multiple hours over multiple days. *See* ECF No. 182 at 2 n.1. Thereafter, the Court issued a 47-page memorandum opinion finding in favor of PETA on all counts. *See* ECF No. 182. The Court also resolved motions concerning the process for relocating the big cats (ECF Nos. 204, 207, 208). This motion represents the final chapter in the Tri-State saga.[2]

To be sure, PETA's victory was hard fought. PETA now seeks reimbursement for 3,967.4 hours of attorney and support staff time. *See* ECF No. 227-2 at 1. For work performed in this case, PETA requests $1,347,236.66 to include $1,263,751.00 in fees, $38,940.39 in costs, and $44,545.27 in expert witness expenses. *See* ECF No. 227-1 at 9; ECF No. 231 at 14. For the following reasons, the Court grants the motion but reduces the award to $1,284,049.11.

## II.   ANALYSIS

### A.  Attorneys' Fees

The Court first turns to the reasonableness of PETA's attorneys' fee request. The Court employs the lodestar method to arrive at a proper fee, multiplying the number of hours reasonably expended by a reasonable hourly rate. The Court addresses each aspect in turn.

---

[2] Tri-State noted its appeal to the United States Court of Appeals for the Fourth Circuit on November 25, 2020. *See* ECF No. 220. The Fourth Circuit affirmed this Court's ruling in full. *PETA v. Tri-State Zoological Park of W. Maryland, Inc.*, 843 F. App'x 493 (4th Cir. 2021), *cert. denied sub nom. Tri-State Zoological Park of W. Maryland, Inc. v. PETA*, 141 S. Ct. 2854 (2021). Thereafter, Tri-State filed a petition for writ of certiorari to the Supreme Court of the United States. *See* ECF No. 226. The Supreme Court declined to grant certiorari. *Tri-State Zoological Park of W. Maryland, Inc. v. PETA*, 141 S. Ct. 2854 (2021).

### 1. Hourly Rates of PETA Attorneys, Paralegals, and Litigation Support Staff

The Court applies the hourly rates set forth in the Local Rules as presumptively reasonable. *See* D. Md. Loc. R., App. B. PETA requests fees incurred by thirteen members of its litigation team: seven attorneys, two paralegals, and four litigation support personnel. As to the attorneys' hourly rates, they fall within the presumptively reasonable range based on the lawyers' years of experience.[3] Tri-State correctly lodges no dispute as to these rates, and so the Court will adopt them.

As to the litigation support staff, the rates also fall within the presumptively reasonable range under the Local Rules. Tri State insists, without explanation, that the billable rate for certain paralegals should be capped at $75.00 per hour. *See* ECF No. 230 at 4. The Court discerns no good reason to credit Tri-State's request, and so will adopt the $150.00 hourly rate as reasonable for all paralegals. *See* D. Md. Loc. R., App. B.

### 2. Hours Reasonably Expended

The Court next turns to the hours expended in relation to PETA's success in this litigation. Twelve non-exhaustive factors guide this Court's reasonableness assessment: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit

---

[3] The rates for each attorney to be applied are as follows: Marcos Hasbun ($475.00, reduced to $460.00); Adam Abelson ($350.00); Conor O'Croinin ($350.00); Justin R. Cochran ($300.00); Martina Bernstein ($475.00); Caitlin Hawks ($350.00); Zeynep Graves ($225.00). Paralegals and litigation support staff were each billed at $150.00 per hour.

arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fee awards in similar cases. *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243–44 (4th Cir. 2009). Courts may use these factors to "adjust the lodestar amount." *McAfee v. Boczar*, 738 F.3d 81, 89 (4th Cir. 2013); *see also Two Men & A Truck/Int'l, Inc. v. A Mover Inc.*, 128 F. Supp. 3d 919, 924 (E.D. Va. 2015).

After careful review of the billing records, the Court finds the fees to be reasonable in large measure. *See Two Men & A Truck/Int'l, Inc.*, 128 F. Supp. 3d at 925. It is undisputed that the claims were complex, both factually and legally. ESA suits are hardly the mine run of civil litigation. Further, this suit spanned nearly three years and involved three species of protected animals. Accordingly, the litigation required substantial investigation, discovery, expert retention and other preparation to present at trial evidence as to the medical, food, shelter, and habitat requirements for each species. PETA next had to demonstrate not only that Tri-State had provided substandard care, feeding, and shelter, but that its dereliction rose to the level of a "take" under the ESA. Thus, the nature and complexity of the case is commensurate with the time and effort spent over the course of this protracted litigation.

Likewise, the training and experience of the trial team supports the fee award entirely. PETA, as the subject-matter specialists, worked hand in glove with seasoned trial attorneys. The case was presented efficiently, cleanly, and professionally. Although the trial team was large, the Court observed throughout the litigation that the team divided tasks well with little overlap in presentation before the Court. On this point, Tri-State contends that $243,895.00 of the fee request constitutes "disallowable entries" that should be deducted from the overall award. The bulk of the proposed deductions concern "intraoffice communications," which Tri-State maintains are "clearly disallowable." *See* ECF No. 230 at 5. Tri-State is correct that the Court's

Local Rules announce generally, "only one lawyer is to be compensated for client, third party, and intra-office conferences." *See* D. Md. Loc. R., App. B.  But the same rule also clarifies that "periodic conferences of defined duration held for the purpose of work organization, strategy, and delegation of tasks in cases where such conferences are reasonably necessary for the proper management of the litigation" are compensable as to the attorneys involved. *See id.*  PETA also underscores that it had already deducted significant sums for any conferences unrelated to strategy, work organization, and delegation of tasks. *See* ECF No. 227-1 at 20–21.  Thus, the Court must focus on whether the team, as configured, rendered unreasonable these litigation strategy conferences.

In fairness to Tri-State, PETA chose to engage *seven* attorneys in this matter.  The sheer number of chefs in the kitchen likely necessitated more conferences than otherwise would have been necessary. *See* ECF No. 227-1 at 8 (listing PETA attorneys and office locations).  This is so even bearing in mind that the nature of complex litigation renders such teams commonplace. *See, e.g.*, *Overbey v. Mayor & City Council of Baltimore*, No. DKC 17-1793, 2021 WL 3037458, at *7 (D. Md. July 19, 2021); *Hermosilla v. Coca-Cola Co.*, No. 10-21418, 2011 WL 9364952, at *16 (S.D. Fla. July 15, 2011), *subsequently aff'd*, 492 F. App'x 73 (11th Cir. 2012) ("[T]here is nothing inherently unreasonable about a client relying on multiple attorneys . . . ."); *see also Johnson v. Univ. Coll. of Univ. of Alabama in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983), *holding modified by Gaines v. Dougherty Cty. Bd. of Educ.*, 775 F.2d 1565 (11th Cir. 1985) (in complex matters, retaining multiple attorneys "is understandable and not a ground for reducing the hours claimed").

On the whole, the challenged billing entries are the sort of "periodic" planning calls permitted by this Court's Local Rules. *See* D. Md. Loc. R., App. B.  That said, the Court cannot

discern from the billing entries the reasonableness of the work performed—either because the descriptions were incomplete or redacted—for a limited subset of the attorneys' fees sought. *See, e.g.*, ECF No. 227-2 at 5, 67, 81, 88, 128.  These entries, even if the distinct minority, caution in favor of a modest percentage-based fee reduction.  *See, e.g.*, *Int'l Painters & Allied Trades Indus. Pension Fund v. Architectural Metal & Glass Sols. Ltd. Liab. Co.*, No. DKC 18-3656, 2020 WL 3577410, at *3 (D. Md. July 1, 2020) (percentage reductions are a practical means to cure defects in a fees application); *Overbey*, 2021 WL 3037458, at *10 (deducting 10% of the total costs for legal research); *Bd. of Educ. of Frederick Cnty. v. I.S. ex rel. Summers*, 358 F. Supp. 2d 462, 470 (D. Md. 2005) (applying a 5% overall fee reduction "to ensure fairness"). The Court will impose a 5% reduction in the attorneys' fee award.

As for Tri-State's lament that PETA more generally "overwork[ed]" the case, the argument gets little traction.  *See* ECF No. 230 at 5.  Tri State particularly challenges the hours that PETA spent preparing for the June 2019 motions hearing and the decision to "moot" the arguments in advance.  *See id.* at 3.  Neither example persuades this Court that PETA had overworked the case.  The hearing involved cross-motions for summary judgment with a voluminous record (ECF Nos. 114, 125), as well as several motions to strike Tri-State's experts (ECF Nos. 94–96, 119, 130).  The cross-motions not only resurrected questions of standing (ECF No. 114 at 6–19), but also focused on the factual sufficiency as to each of the eight covered animals (ECF No. 114 at 19–44).  In short, the Court does not doubt that PETA's preparation had been necessary and reasonable.

Nor is a "moot" of an anticipated hearing on multiple dispositive motions an "unnecessary" endeavor.  *See* ECF No. 230 at 2.  When the Court grants a hearing on motions of this nature, good lawyers practice beforehand.  *See OCA Greater Houston v. Texas*, No. 15-679-

RP, 2018 WL 6201955, at *4 (W.D. Tex. Nov. 28, 2018) ("It is common for a team of attorneys to prepare for oral argument, as there are obvious benefits to having multiple attorneys organize and refine an argument outline and to participate in mock arguments."); *Zbaraz v. Hartigan*, No. 84 C 771, 1988 WL 84721, at *9 (N.D. Ill. Aug. 5, 1988) ("In fact, compensation is available for the participation in mock arguments."). And when lawyers practice, they are prepared—a necessary precondition to good oral argument. *See OCA Greater Houston*, 2018 WL 6201995, at *4. Given the size, complexity, and overall success of PETA as to those motions in particular, the time was properly and reasonably spent.

As a third purported illustration how PETA supposedly "overworked" this case, Tri-State flyspecks time spent updating the expert reports of Dr. Haddad and Mr. Pratte. *See* ECF No. 230 at 2–3. But Tri-State misses the larger point. Because the litigation dragged on for years, PETA rightfully needed to conduct another site inspection closer to trial to address the covered animals' habitat, food sources, medical care, and shelter. PETA's experts next had to distill the new evidence and provide updated reports to Tri-State. This inevitably went as smoothly as it did because PETA's counsel coordinated the entire process. *See* Fed. R. Civ. P. 26 advisory committee's note to 1993 amendment (explaining that the rule "does not preclude counsel from providing assistance to experts in preparing the reports" and that occasionally "this assistance may be needed"). Had PETA not taken the time necessary to coordinate the inspection and updated reports, Tri-State would certainly have challenged the expert opinions as outdated and ultimately of marginal relevance. Shepherding the updated reports thus constitutes a reasonable expenditure of counsel time.

The remaining arguments against the fee request are easily resolved. Tri-State urges the Court to adjust downward the fee award to align more with its own more modest fees

($200,000.00 to $300,000.00). *See* ECF No. 230 at 6. Tri-State argues, with little support, that that any award above its own fees is "the result of overwork, intraoffice conferencing, and other discretionary decisions." *See id.* But in this case, neither law nor common sense suggests that the Court should use Defendants' fee as a benchmark of reasonableness. For one, PETA bore the burden of proof in a very complex case. This asymmetry in litigation, at a minimum, makes the opposing party's expended hours a poor proxy for reasonableness. *See Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1151 (9th Cir. 2001); *Johnson*, 706 F.2d at 1208 ("This Court has questioned the relevance of the number of hours spent by defense counsel to a determination of the reasonable fee for plaintiffs' attorneys."). Moreover, PETA's comparatively thorough preparation likely secured its across-the-board success. *Cf. Ferland*, 244 F.3d at 1151. Tri-State's fees, therefore, bear little on whether PETA's fees are reasonable.

Tri-State next urges the Court to consider *Kuehl v. Sellner*, 161 F. Supp. 3d 678 (N.D. Iowa 2016), *aff'd*, 887 F.3d 845 (8th Cir. 2018), an ESA case in which another court awarded $239,979.25 in fees. True, *Kuehl* involved the prosecution of a zoo for ESA violations, culminating in a trial. *Compare* ECF No. 182 *with Kuehl*, 161 F. Supp. 3d 678. But for purposes of determining recoverable fees, *Kuehl* offers little guidance. As PETA correctly observes, *Kuehl* and this case were litigated "in vastly different manners." *See* ECF No. 231 at 12. Unlike here, the parties in *Kuehl* did not engage in extensive motions practice, nor was discovery as protracted. As a result, the four-day trial in *Kuehl* occurred within 16 months of the lawsuit's filing, not the nearly three years this case took to try to conclusion.

Nor does the Northern District of Iowa's legal market fairly compare to this District. *Compare* ECF No. 230-2 at 18 (finding $250.00 hourly rate reasonable for attorney with a decade of experience) *with* D. Md. Loc. R., App. B (listing between $250.00 and $350.00 as

presumptively reasonable for an attorney with a decade of experience). The substantial discrepancy in billable hours alone explain much of the disparity between *Kuehl* and this case. Thus, *Kuehl* provides the Court little guidance in the reasonableness assessment.

The Court lastly addresses the manner in which Tri-State fronted a collection of haphazard "challenges" to PETA's time entries. Remarkably, Tri-State thought it sufficient to submit to the Court a copy of PETA's timekeeping records, annotated with cryptic comments such as "this was a very strange entry" "unnecessary and duplicative," "excessive," or "not be responsible for." *See, e.g.*, ECF No. 230-1 at 21, 30, 85, 97. Tri-State cannot possibly expect the Court to comb through scores of marginal comments, especially when many do not make much sense. Tri-State, for instance, urges the Court to deduct PETA's time spent drafting an *ex parte* settlement letter that the Magistrate Judge had *ordered*. *See* ECF No. 230-1 at 97 (Tri-State deducting $1,012.50 in fees for PETA drafting *ex parte* letter); *see also* ECF No. 142 (Magistrate Judge ordering parties to submit *ex parte* letters by email). Similarly, Tri-State seems to object (in the margins of course) to the time PETA's counsel spent researching the question of judicial recusal, even though it was Tri-State that filed the recusal motion in the first place. *See* ECF No. 230-1 at 89. In the future, if Tri-State wishes the Court to entertain an argument, then it ought to make it—in a pleading and in full sentences.

### B. Costs

The Court lastly turns to costs. PETA requests $38,940.39 in litigation costs and $44,545.27 for expert witness expenses. *See* ECF No. 227-1 at 9. Tri-State does not at all oppose these requested amounts. Further, the amounts are reasonable and well-supported. *See* ECF Nos. 225-1 & 227-9. They will be awarded in full.

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS in substantial part PETA's motion for attorneys' fees. PETA is awarded $1,200,563.45 in attorneys' fees and $83,485.66 in costs for a total award of $1,284,049.11. A separate Order follows.

March 2, 2022
Date

/s/
Paula Xinis
United States District Judge